**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2129**

OHIO VALLEY ENVIRONMENTAL COALITION, INC.; WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.; SIERRA CLUB; COAL RIVER
MOUNTAIN WATCH INC.,

Plaintiffs – Appellants,

v.

UNITED STATES ARMY CORPS OF ENGINEERS; THOMAS P. BOSTICK,
Commander and Chief of Engineers, U.S. Army Corps of
Engineers; STEVEN MCGUGAN, Colonel, District Engineer, U.S.
Army Corps of Engineers, Huntington District,

Defendants – Appellees,

RAVEN CREST CONTRACTING, LLC,

Intervenor/Defendant – Appellee.

Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston.  John T. Copenhaver,
Jr., District Judge.  (2:12-cv-06689)

Argued: May 11, 2016                    Decided: July 8, 2016

Before DUNCAN, WYNN, and HARRIS, Circuit Judges.

Affirmed by published opinion.  Judge Duncan wrote the opinion,
in which Judge Wynn and Judge Harris joined.

**ARGUED:** Peter M. Morgan, SIERRA CLUB, Denver, Colorado, for
Appellants.  Robert Harris Oakley, UNITED STATES DEPARTMENT OF

JUSTICE, Washington, D.C.; Douglas J. Crouse, JACKSON KELLY, PLLC, Charleston, West Virginia, for Appellees. **ON BRIEF:** Joseph M. Lovett, J. Michael Becher, APPALACHIAN MOUNTAIN ADVOCATES, Lewisburg, West Virginia, for Appellants. John C. Cruden, Assistant Attorney General, Aaron Avila, Ruth Ann Storey, Austin Saylor, Environment and Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Federal Appellees. Robert G. McLusky, JACKSON KELLY, PLLC, Charleston, West Virginia, for Appellee Raven Crest Contracting, LLC.

---

DUNCAN, Circuit Judge:

Raven Crest Contracting, LLC ("Raven Crest") operates a surface coal mine near Racine, West Virginia, known as the Boone North No. 5 Surface Mine ("the Boone North mine"). This action challenges the adequacy of the environmental review conducted by the Army Corps of Engineers ("the Corps") before the Corps issued a permit pursuant to section 404 of the Clean Water Act, 33 U.S.C. § 1344, authorizing Raven Crest to discharge fill material into waters of the United States in conjunction with that mine.

The Plaintiffs-Appellants are a consortium of environmental groups, collectively "OVEC,"[1] that have engaged in advocacy efforts involving surface coal mining operations in West Virginia in the past. OVEC claims that the Corps violated both the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., and the Clean Water Act by failing to consider evidence that surface coal mining is associated with adverse public-health effects in nearby communities. The district court disagreed, and granted the Corps' and Raven Crest's motions for summary judgment, holding that the Corps properly determined that the connection between surface coal mining and public

---

[1] OVEC includes the Ohio Valley Environmental Coalition, the West Virginia Highlands Conservancy, Coal River Mountain Watch, and the Sierra Club.

3

health was an issue not properly within the scope of its environmental review. OVEC appealed. Because this case is materially indistinguishable from our precedent in Ohio Valley Environmental Coalition v. Aracoma Coal Company, 556 F.3d 177 (4th Cir. 2009), in which we rejected a similar challenge, we affirm.

## I.

At the Boone North mine, Raven Crest planned to "provide for the safe and efficient extraction of approximately 6.8 [million] tons of steam grade bituminous coal" from a 724-acre area. J.A. 93. To carry out its proposal, Raven Crest was required to obtain permits under each of four federal regulatory provisions: the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), 30 U.S.C. § 1201 et. seq.; and sections 401, 402, and 404 of the Clean Water Act, 33 U.S.C. §§ 1341, 1342, 1344. We review each of these permitting requirements below, focusing particularly on Raven Crest's section 404 permit, as that is the specific permit OVEC has challenged in this case.

### A. SMCRA Permit

SMCRA is a federal statute that mandates certain minimum requirements for state programs that regulate surface mining. If the state regulatory program meets those requirements, SMCRA grants that state "exclusive jurisdiction over the regulation of

4

surface coal mining and reclamation operations" within the state's borders. 30 U.S.C. § 1253. West Virginia's federally approved SMCRA program is administered by the West Virginia Department of Environmental Protection ("WVDEP").

Anyone wishing to undertake surface coal mining operations in West Virginia must obtain a SMCRA permit from WVDEP. Aracoma, 556 F.3d at 189 (citing 30 U.S.C. § 1256(a)). The SMCRA permit application "must provide detailed information about possible environmental consequences of the proposed operations, as well as assurances that damage to the site will be prevented or minimized during mining and substantially repaired after mining has come to an end." Id. at 196; see 30 U.S.C. §§ 1257, 1265.

WVDEP issued a SMCRA permit to Raven Crest on September 3, 2009, authorizing Raven Crest "to engage in surface mining" at the Boone North mine. J.A. 522.

### B. 401 Certification

Section 401 of the Clean Water Act, 33 U.S.C. § 1341, requires a prospective mine operator to obtain a so-called "401 certification" from the state in which the mine will be located "stating that any discharge from the mine site will comply with all applicable water quality standards." Aracoma, 556 F.3d at 190. Notably, the Clean Water Act requires that state water quality standards be submitted to the federal

5

Environmental Protection Agency ("EPA") for approval, and that they be sufficiently stringent to protect public health. See 33 U.S.C. § 1313(c). Without a 401 certification, no other "Federal license or permit to conduct any activity . . . which may result in any discharge" into waters of the United States is valid. 33 U.S.C. § 1341(a).

WVDEP issued a 401 certification for the Boone North mine on May 13, 2011, representing that Raven Crest's proposed activities would not cause a violation of West Virginia's EPA-approved water quality standards. J.A. 524.

## C. Section 402 NPDES Permit

Under section 402 of the Clean Water Act, 33 U.S.C. § 1342, no person may discharge pollutants into the waters of the United States without a permit issued pursuant to the National Pollutant Discharge Elimination System ("NPDES"). As with SMCRA, the Clean Water Act sets up a cooperative-federalism approach in which states may administer their own NPDES permitting program so long as the state program meets certain minimum federal requirements. West Virginia's NPDES permitting program is also administered by WVDEP.

Raven Crest's plan for the Boone North mine involved the discharge of both treated water and stormwater runoff into several creeks and tributaries at the Boone North mine. WVDEP

issued an NPDES permit on May 27, 2009, authorizing those discharges.  J.A. 526.

## D. Section 404 Permit

Finally, under section 404 of the Clean Water Act, 33 U.S.C. § 1344, no person may discharge dredged or fill material into waters of the United States without a permit from the Corps.  Raven Crest's plan for the Boone North mine involved "mining through streams," a process in which stream channels are "excavated in order to recover coal reserves that lie directly beneath and adjacent to them," and then are "backfilled, regraded to [their approximate original contour] (or higher), and the affected channels restored."  J.A. 93.  Because this process involves discharging fill material into streams, Raven Crest needed a section 404 permit from the Corps before it could proceed.  Below, we first provide an overview of the Corps' permitting process, then recount the specifics of Raven Crest's efforts to obtain a section 404 permit for the Boone North mine.

### 1.

In reviewing a section 404 permit application, the Corps must ensure that the proposed discharge of fill material will not cause "'[s]ignificantly adverse effects' on human health or welfare, on aquatic life and other wildlife dependent on aquatic ecosystems, on aquatic ecosystem diversity, productivity, and stability, or on recreational, aesthetic, and economic values."

7

Aracoma, 556 F.3d at 191 (quoting 40 C.F.R. § 230.10(c)). In addition, the Corps must conduct a "public interest review" for each permit application through which "[t]he benefits which reasonably may be expected to accrue from the proposal must be balanced against its reasonably foreseeable detriments." Id. (quoting 33 C.F.R. § 320.4(a)(1)).

Because the Corps is a federal agency, its review of a section 404 permit application must also comply with NEPA, which requires agencies to produce an environmental impact statement ("EIS") before undertaking any "major Federal action[] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C).[2] NEPA's environmental-review requirements are procedural, not substantive. Thus, "even agency action with adverse environmental effects can be NEPA-compliant so long as the agency has considered those effects and determined that competing policy values outweigh those costs." Aracoma, 556 F.3d at 191.

To determine whether an action is a "major" one requiring an EIS, agencies prepare an Environmental Assessment ("EA"), a "concise public document" meant to "provide sufficient evidence and analysis for determining whether to prepare an [EIS] or a

_____

[2] Although the requirements to obtain SMCRA permits, 401 certifications, and NPDES permits are all based on federal law, those three permits are issued by state agencies--in this case, WVDEP--and thus are not subject to NEPA.

finding of no significant impact." 40 C.F.R. § 1508.9(a); see Friends of Back Bay v. U.S. Army Corps of Eng'rs, 681 F.3d 581, 584 (4th Cir. 2012). If the EA results in a finding of no significant impact, the agency need not prepare an EIS.

2.

Raven Crest initiated the section 404 permitting process for the Boone North mine on October 29, 2009, by submitting a permit application to the Corps. J.A. 92. After receiving Raven Crest's application, the Corps issued a "Public Notice" summarizing the application and soliciting public comments. J.A. 134. OVEC submitted a lengthy response letter. In that letter, it expressed a concern that "[v]arious studies have shown that coal mining has significant impacts on the health of those living in the coal fields," and contended that "[t]hese impacts must be considered by the Corps during the permitting process." J.A. 204.[3]

On August 10, 2012, the Corps issued a Permit Evaluation and Decision Document that included both the section 404-required "public interest review" and the NEPA-required EA, and

---

[3] For example, OVEC quoted one study finding that "[a]dult hospitalizations for chronic pulmonary disorders and hypertension are elevated as a function of county-level coal production, as are rates of mortality; lung cancer; and chronic heart, lung, and kidney disease." J.A. 204. It quoted another that found "cancer clusters . . . correspond[ing] to areas of high coal mining intensity." Id.

9

ultimately granted Raven Crest's section 404 permit. The public interest review portion of the document concluded that issuing the permit would not be contrary to the public interest. The EA portion of the document concluded that granting the permit would "not have a significant impact on the quality of the human environment," and that therefore the Corps did not need to prepare an EIS. J.A. 582–83.

The Corps did not consider the studies OVEC cited in its comment letter, explaining that the issues those studies raised regarding the relationship between surface coal mining and public health "are not within the purview of the Corps' regulatory authority, but are considered by WVDEP during the SMCRA permitting process." J.A. 642.

In response, OVEC brought this action under the Administrative Procedure Act ("APA"), seeking to set aside the Corps' actions. Specifically, OVEC sought suspension or revocation of Raven Crest's section 404 permit, claiming that the Corps' decision not to consider those studies violated both NEPA and section 404.[4] Raven Crest intervened to protect its interest in the permit's continued validity. In a lengthy order, the district court granted summary judgment to the Corps

---

[4] OVEC asserted additional claims related to the Boone North mine's potential effects on water quality, but those claims have been settled and are not before us on appeal.

10

and Raven Crest, ruling that the Corps had complied with NEPA and section 404 in issuing Raven Crest's permit. OVEC appealed.

## II.

Under the APA, a court will set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Defenders of Wildlife v. N.C. Dept. of Transp., 762 F.3d 374, 393 (4th Cir. 2014). "This inquiry must be searching and careful, but the ultimate standard of review is a narrow one." N.C. Wildlife Fed'n v. N.C. Dept. of Transp., 677 F.3d 596, 601 (4th Cir. 2012) (internal quotation marks and citations omitted). "Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made." Aracoma, 556 F.3d at 192 (internal quotation marks and citation omitted). Although the APA standard requires deference to the agency's decision-making, our review of the district court's legal conclusions on summary judgment is de novo. Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 434 (4th Cir. 2011).

We review the merits of OVEC's arguments below. We begin with its argument that the Corps acted contrarily to NEPA in

11

issuing Raven Crest's section 404 permit, and then address OVEC's argument that the Corps acted contrarily to section 404.

## A.

OVEC argues that the Corps violated NEPA by failing to include in its EA any analysis of the studies OVEC cited as suggesting a connection between surface coal mining and adverse public health effects in nearby communities. The Corps responds that OVEC's argument is foreclosed by our precedent in Aracoma, and we agree.

## 1.

Aracoma, like this case, involved a dispute about the proper scope of the Corps' NEPA inquiry for a section 404 permit associated with a proposed surface coal mine. The mines at issue in Aracoma involved "valley fills," a practice in which excess earth excavated from the mine is disposed of in a manner that buries an entire valley.[5] To ensure the stability of the resulting mass, valley fills also typically involve the creation of an "underdrain system" by placing large boulders in the streams located beneath the valley fill. Aracoma, 556 F.3d

---

[5] Factually, we note that the mines at issue in Aracoma had a substantially larger environmental footprint than the Boone North mine in that they involved valley fills, and affected 68,841 linear feet of streams. See 556 F.3d at 187. The Boone North mine, in contrast, involves no valley fills and affects only 15,079 linear feet of streams.

12

at 186. This constitutes the discharge of fill material into waters of the United States, necessitating a section 404 permit.

OVEC, which was also the plaintiff in Aracoma, argued that the Corps "should have considered all environmental impacts caused by the fills" during its permit review process, "including the impacts to the upland valleys where the fills will be located." Id. at 193. The Corps countered that it had reasonably interpreted its own regulations to limit the scope of its review to only the effects of the discharge of fill material into "the affected waters and adjacent riparian areas." Id.

We agreed with the Corps. The Corps' regulations provide that, in conducting its NEPA analysis, the Corps need address only "the impacts of the specific activity requiring a [section 404] permit and those portions of the entire project over which the district engineer has sufficient control and responsibility to warrant Federal review." 33 C.F.R. pt. 325, app. B, § 7(b)(1). Further, the Corps has "sufficient control and responsibility" to warrant review of a project as a whole, rather than just the specific activity requiring a Corps permit, when "the environmental consequences of the larger project are essentially products of the Corps permit action." Id. pt. 326, app. B., § 7(b)(2). In the case of the valley fills at issue in Aracoma, we held that the "specific activity" authorized by the section 404 permit was "nothing more than the filling of

13

jurisdictional waters for the purpose of creating an underdrain system for the larger valley fill," and that the Corps did not have sufficient control and responsibility over the entire valley fill to warrant including the entire project in the scope of the Corps' environmental review. Aracoma, 556 F.3d at 194–95.

In so holding, we reasoned that "[t]o say that the Corps has a level of control and responsibility over the entire valley fill project such that 'the environmental consequences of the larger project are essentially products of the Corps permit action,'" would be "to effectively read out of the equation the elaborate, congressionally mandated schema for the permitting of surface mining operations prescribed by SMCRA." Id. at 195 (quoting 33 C.F.R. pt. 325, app. B, § 7(b)(2)). In other words, because the great bulk of environmental effects associated with surface coal mining operations in West Virginia are authorized by WVDEP's granting of a SMCRA permit, not by the Corps' granting of a section 404 permit, it would be inappropriate to require the Corps to review aspects of those projects outside of the specific dredge-and-fill activities regulated by section 404.

2.

This case involves a very similar dispute. Here, the Corps limited its NEPA review to the environmental impacts of the

14

dredge-and-fill activities associated with "mining through" the streams located at the Boone North mine site. OVEC, however, argues that the Corps' review should have included consideration of the environmental impacts of surface coal mining more generally, and specifically of the studies OVEC cited showing adverse public health effects in communities near surface coal mines.

As in Aracoma, however, the activity OVEC seeks to force the Corps to study--surface coal mining--is neither the "specific activity" authorized by Raven Crest's section 404 permit nor an aspect of the Boone North mine over which the Corps has "sufficient control and responsibility to warrant Federal review." See 33 C.F.R. pt. 325, app. B, § 7(b)(1). The Corps has no jurisdiction to authorize surface coal mining; SMCRA makes clear that only WVDEP can do that in West Virginia. The specific activity the Corps authorized was simply the dredging and filling of certain stream beds at the Boone North mine. Thus, the reasoning and holding in Aracoma are equally applicable to this case: the Corps properly limited its NEPA review to only those environmental impacts associated with the specific discharge of fill material authorized at the Boone North mine.

Nevertheless, OVEC seeks to distinguish this case from Aracoma in two ways, neither of which is persuasive. First,

15

OVEC claims that the "specific activity" authorized by the section 404 permit in this case is not simply the discharge of fill material into streams, but rather the actual coal mining that creates the fill material to be discharged. According to OVEC, the Corps itself "repeatedly described the activity being permitted as the mine-through of streams on the site to recover coal reserves." Appellants' Br. at 22.

This first proposed distinction fails because it overlooks the core holding of Aracoma, which is that the Corps' jurisdiction relates only to fill activities associated with surface coal mining; the mining itself is regulated exclusively by WVDEP pursuant to SMCRA. Coal mining cannot be the "specific activity" authorized by Raven Crest's section 404 permit, because the Corps has no jurisdiction to authorize coal mining; under SMCRA, only WVDEP can do that. In reaching this conclusion, we are in accordance with the Sixth Circuit which, in a case that also involved mining through streams, held that Aracoma "strongly and persuasively support[ed] the Corps'[] decision to limit its scope of analysis" to include only the fill activities associated with the mining, and not the mining itself. Kentuckians for the Commonwealth v. U.S. Army Corps of Eng'rs, 746 F.3d 698, 710 (6th Cir. 2014).

Second, OVEC argues that Aracoma is inapposite because its claims in that case "were limited to the Corps' duty to consider

16

water quality impacts of the authorized valley fills and related mining," whereas here they relate to human health. Appellants' Br. at 33. According to OVEC, _Aracoma_ allowed the Corps to "rely on existing statutory schemes that . . . adequately address" the water quality concerns, _id._, but no such statutory schemes exist to address the impacts of surface coal mining on human health.

This assertion is simply incorrect. Section 401 of the Clean Water Act requires a certification by the State of West Virginia that a proposed mine will not cause a violation of state water-quality standards, which are developed with human-health effects in mind. WVDEP issued such a certification here.

Moreover, even if human-health impacts were not considered elsewhere in the permitting process, _Aracoma_ would not require the Corps to consider them. OVEC misreads _Aracoma_ as saying that the Corps must consider any effects of coal mining that are not sufficiently studied by other agencies. To the contrary, as we have explained, _Aracoma_ holds that the Corps need not consider the effects of surface coal mining because the Corps' issuance of a section 404 permit cannot authorize surface coal mining; only a SMCRA permit can do that. We therefore conclude

17

that OVEC's attempts to distinguish <u>Aracoma</u> in this regard are unavailing.[6]

B.

Finally, OVEC argues that two provisions of the Corps' regulations implementing section 404 require the Corps to consider the connection between surface coal mining and adverse public health effects during its permitting process. First, OVEC cites 40 C.F.R. § 230.10(c), which prohibits the Corps from issuing a section 404 permit for discharges of fill material that "will cause or contribute to significant degradation of the waters of the United States," including discharges that will involve "[s]ignificantly adverse effects . . . on human health or welfare." Second, OVEC cites 33 C.F.R. § 320.4(a)(1), which requires the Corps to conduct a "public interest review" that involves a weighing of "[t]he benefits which reasonably may be expected to accrue from the proposal . . . against its reasonably foreseeable detriments."

---

[6] We also reject OVEC's argument that the Corps violated NEPA because it considered the economic benefits of the proposed mine as a whole, but limited its consideration of environmental impacts solely to the authorized discharge of fill material. For this argument, OVEC relies on a Corps regulation requiring that the scope of NEPA analysis "used for analyzing both impacts and alternatives should be the same scope of analysis used for analyzing the benefits of a proposal." 33 C.F.R. pt. 325, App. B., § 7(b)(3). But that regulation is inapplicable because the Corps' discussion of economic benefits occurred not in its NEPA analysis, but rather as part of its section 404 "public interest review." <u>See</u> J.A. 551.

18

These provisions certainly require the Corps to take into account the public-health effects of a proposed discharge of fill material before granting a section 404 permit. They do not, however, create an obligation for the Corps to study the effects of activities beyond the proposed discharge itself. Thus, OVEC's section 404 argument fails for the same reason its NEPA argument fails: it seeks to require the Corps to study the effects of surface coal mining, an activity it cannot authorize and over which, under SMCRA, WVDEP has exclusive jurisdiction. Accordingly, we also affirm the district court's holding that the Corps did not violate the Clean Water Act in granting Raven Crest's section 404 permit.

## III.

For the reasons stated above, the judgment of the district court is

AFFIRMED.

19