**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-2082**

———————

PACEM SOLUTIONS INTERNATIONAL, LLC,

Plaintiff – Appellant,

v.

U.S. SMALL BUSINESS ADMINISTRATION; EVERETT WOODEL, JR., Acting
Administrator of the Small Business Administration,

Defendants – Appellees.

———————

Appeal from the United States District Court for the Eastern District of Virginia at
Alexandria.  Leonie M. Brinkema, District Judge.  (1:23-cv-01702-LMB-IDD)

———————

Argued:  May 8, 2025                                        Decided:  August 4, 2025

———————

Before WILKINSON, NIEMEYER, and BERNER, Circuit Judges.

———————

Affirmed by published opinion.  Judge Berner wrote the opinion, in which Judge Wilkinson
and Judge Niemeyer joined.

———————

**ARGUED:**  Milton C. Johns, EXECUTIVE LAW PARTNERS PLLC, Fairfax, Virginia,
for Appellant.  Peter B. Baumhart, OFFICE OF THE UNITED STATES ATTORNEY,
Alexandria, Virginia, for Appellee. **ON BRIEF**:  Erik Sean Siebert, OFFICE OF THE
UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

BERNER, Circuit Judge:

In response to the COVID-19 pandemic, Congress enacted legislation to provide financial assistance to small businesses. This aid package included relief payments on certain small business loans. Not all loans were eligible, however. Only loans in "regular servicing status" qualified. Congress tasked the Small Business Administration with overseeing the relief payment program. In fulfilling this obligation, the Small Business Administration determined that a loan taken out by PACEM Solutions International, LLC was ineligible for relief. PACEM filed this lawsuit challenging that determination. The district court granted summary judgment to the Small Business Administration, and we affirm.

## I.      Background

Section 7(a) of the Small Business Act of 1953 established a program through which the Small Business Administration (SBA) guarantees certain loans extended to small businesses. These loans, known as 7(a) loans, are typically provided by private lenders. Private lenders designated as "Preferred Lenders" can approve loan applications and modifications on behalf of the SBA.

In August 2018, PACEM Solutions International, LLC (PACEM) applied for a $5 million 7(a) loan—the maximum amount allowed under the 7(a) loan program—from Access National Bank (Access National), a Preferred Lender. Access National approved the application. The original terms of the loan (the Initial Loan Agreement) required PACEM to make monthly interest payments and to repay the $5 million principal in six

2

installments, the last of which was due in August 2019, within 12 months of the loan's execution date.

After PACEM missed its first scheduled principal payment in March 2019, PACEM and Access National agreed to the first of many loan modifications. Under this modified agreement (the First Modified Agreement), PACEM committed to repaying the $5 million principal in four installments, the last of which still fell within 12 months of the Initial Loan Agreement's execution date.

A few weeks after entering into the First Modified Agreement, PACEM again failed to make a principal payment. PACEM and Access National then agreed to modify the loan a second time (the Second Modified Agreement). The Second Modified Agreement required PACEM to meet additional terms and conditions, including securing the loan with the deed of trust to a munition factory PACEM owned in Florida that was valued at $7.6 million.

Shortly after PACEM and Access National executed the Second Modified Agreement, Access National entered into a merger that resulted in the creation of Atlantic Union Bank (Atlantic Union). Atlantic Union took over the servicing of PACEM's loan.

This pattern of missed payments followed by loan modifications continued. PACEM and Atlantic Union agreed to modify the loan for a third time in July 2019 (the Third Modified Agreement) and a fourth time in November 2019 (the Fourth Modified Agreement). At the time PACEM entered into the Fourth Modified Agreement—more than 15 months after the Initial Loan Agreement was executed—PACEM had repaid only $250,000 of the original $5 million principal. The Fourth Modified Agreement required

3

PACEM to repay all outstanding principal and interest by February 15, 2020. By March 2020, however, PACEM had repaid only $350,000. The vast majority of the principal, $4.65 million, remained outstanding. The record indicates that PACEM continually failed to make the scheduled principal payments, ostensibly because of an unexpected delay in a $65 million munitions contract with the Iraq Ministry of Interior, PACEM's largest client.

On March 19, 2020, eight days after the World Health Organization declared COVID-19 a pandemic, PACEM and Atlantic Union amended the loan for a fifth time (the Fifth Modified Agreement). The Fifth Modified Agreement required PACEM to repay all outstanding principal and interest by June 15, 2020, and to make monthly interest-only payments until that date.

On March 25, 2020, six days after PACEM and Atlantic Union executed the Fifth Modified Agreement, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act), a $2.2 trillion economic stimulus package. The CARES Act appropriated $17 billion to assist small businesses in repaying outstanding loans. Pub. L. 116-136 § 1112(f), 134 Stat. 281, 310 (2020). Section 1112 of the CARES Act obligated the SBA to pay the ensuing six months of "principal, interest, and any associated fees" owed on all 7(a) loans executed prior to the enactment of the CARES Act that were "in a regular servicing status" at the time the Act was enacted. Pub. L. 116-136 § 1112(c)(1), 134 Stat. at 309. Such loans were considered "covered loans." *Id.*

The Fifth Modified Agreement required PACEM to complete *all* outstanding payments within the six-month period covered by the CARES Act. Thus, the terms of the Act required the SBA to cover the full $4.65 million principal, plus interest and fees,

4

provided that PACEM's loan was "in a *regular servicing status*." Pub. L. 116-136 § 1112(c)(1), 134 Stat. at 309 (emphasis added). Though the CARES Act does not define "regular servicing status," the SBA in April 2020 issued a Procedural Notice clarifying that "regular servicing status" excluded "any loan that has been moved from 'regular servicing' into '*liquidation*' status, or any loan that *should have been moved* [into liquidation status] pursuant to SBA Loan Program Requirements." SBA Procedural Not. 5000-20020 § A.2.b (Apr. 16, 2020) (emphasis added).[1]

In May 2020, PACEM and Atlantic Union agreed to amend the loan for a sixth and final time (the Sixth Modified Agreement). The Sixth Modified Agreement extended the loan's repayment date to December 1, 2020, requiring PACEM to repay the outstanding principal in six monthly installments of $775,000, beginning on June 1, 2020, and ending on December 1, 2020. The six-month period during which the CARES Act obligated the SBA to cover loan repayments ended on September 1, 2020. Thus, while the Fifth Modified Agreement required PACEM (and therefore potentially the SBA) to repay the full outstanding principal of $4.65 million, the Sixth Modified Agreement reduced the obligation to $3,100,000, during the relevant CARES Act period.

On June 1, 2020, the SBA sent Atlantic Union a $35,262.50 payment to cover the April and May interest payments owed by PACEM under the Fifth Modified Agreement. Following that payment, however, the SBA did not make any further payments to Atlantic Union for the PACEM loan. Atlantic Union contacted the SBA in August 2020 to inquire

---

[1] Available at https://perma.cc/RH7Z-XLUU.

about the missing loan payments for June and July. The SBA responded five days later, informing Atlantic Union that "[i]t appears the loan has been misreported and [is] showing delinquent, which may have resulted in not receiving payments." J.A. 37. PACEM contends that it was not notified of this development for eight months. The SBA did not send Atlantic Union any loan payments on behalf of PACEM for the months of June, July, August, or September 2020.

In November 2020, the SBA informed Atlantic Union that the SBA needed additional information on the PACEM loan to process Atlantic Union's request for missing payments. After receiving the requested information from Atlantic Union, the SBA began investigating the PACEM loan's eligibility under the CARES Act.

On January 27, 2021, Atlantic Union notified PACEM that it was in default for failing to repay the loan by December 1, 2020, as required by the Sixth Modified Agreement. Two weeks later, PACEM sent a letter to the SBA seeking more information about the missing loan payments. PACEM told the SBA that Atlantic Union had not provided PACEM with any details about the missing payments, other than that "the loan was still in review." J.A. 170. On May 19, 2021, the SBA Ombudsman sent PACEM an internal SBA memo explaining that "[t]he loan has been in default since late April 2020, which was reported to the [SBA] by [Atlantic Union] in May 2020," at which point "[PACEM] ceased to be in regular servicing status" and was thus ineligible to receive additional payments under the CARES Act. J.A. 166. The SBA stated that Atlantic Union had reported the default in its May 2020 submission of SBA Form 1502.

6

In November 2022, the SBA informed Atlantic Union that the SBA's investigation into the PACEM loan revealed that the loan had *never* been eligible to receive payments under the CARES Act. As a result, the SBA not only denied Atlantic Union's request for the four remaining interest and principal payments (June – September 2020), it also asked Atlantic Union to return the $35,262.50 the SBA previously sent on behalf of PACEM to cover its April and May 2020 interest payments. An SBA attorney called PACEM on December 12, 2022, and followed up with an email (the SBA Email) on December 23, 2022, stating, "SBA has formally denied the claim made by PACEM." J.A. 366. The SBA explained that "[a]fter reviewing all of the documents submitted by PACEM, reviewing the loan itself and communicating with the lender, Atlantic Union Bank, SBA determined that PACEM [was] ineligible to receive Section 1112 payments under the CARES Act given, among other things, PACEM's loan and payment history." J.A. 366.

PACEM filed a complaint against the SBA in the Eastern District of Virginia in December 2023, asserting that: (1) the SBA's decision to withhold payments violated the CARES Act; (2) the SBA's decision to withhold the last four CARES Act payments was arbitrary and capricious, in violation of Administrative Procedure Act (APA); and (3) the SBA failed to provide notice of its decision to withhold payments, in violation of the Due Process Clause of the Fifth Amendment and the APA.

In July 2024, the parties filed cross-motions for summary judgment. The district court granted summary judgment to the SBA on all claims. The district court concluded that the SBA did not violate the CARES Act because "the CARES Act . . . was quite clear that if the loan was not performing appropriately, th[e] SBA was not required . . . to make

7

the payments." J.A. 403. The district court found that PACEM's loan was not performing appropriately, pointing to the fact that the Fifth Modified Agreement, executed just a week before passage of the CARES Act, stated that the loan was in default. The district court further concluded that the SBA had a sufficient record before it at the time it made its decision to stop the payments, and did not act arbitrarily or capriciously in violation of the APA. Finally, the district court rejected PACEM's Due Process argument, explaining that any defects in the SBA's notifications to PACEM were, at most, harmless.

PACEM then filed a motion for relief with the district court based on "mistake, inadvertence, *surprise*, or excusable neglect." Fed. R. Civ. P. 60(b) (emphasis added). PACEM asserted that it was "complete[ly] surprise[d]" by the district court's conclusion that the loan was in default. J.A. 414. The district court denied PACEM's Rule 60(b) motion, explaining that any claim of "surprise" was undercut by PACEM's acknowledgment of the record evidence of default. J.A. 433. Following the district court's dismissal of PACEM's Rule 60(b)(1) motion, PACEM filed this appeal of the district court's grant of summary judgment.

## II.    Standard of Review

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023). Where parties file cross-motions for summary judgment, we consider each motion separately and view the facts in the light most favorable to the party opposing that motion. *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014). Here, because we

review only the grant of the SBA's motion, we view the facts in the light most favorable to the PACEM, the party opposing the motion. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In the context of an APA challenge, we will set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Ohio Valley Env't Coal., Inc. v. U.S. Army Corps of Eng'rs*, 828 F.3d 316, 321 (4th Cir. 2016). "This inquiry must be searching and careful, but the ultimate standard of review is a narrow one." *N.C. Wildlife Fed'n v. N.C. Dep't. of Transp.*, 677 F.3d 596, 601 (4th Cir. 2012) (internal quotation marks and citations omitted). "Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made." *Ohio Valley Envtl. Coal., Inc. v. Aracoma Coal Company*, 556 F.3d 177, 192 (4th Cir. 2009). This court "need only ensure[ ] that the agency has acted within a zone of reasonableness and . . . has reasonably considered the relevant issues and reasonably explained the decision." *Ren v. U.S. Citizenship & Imm. Servs.*, 60 F.4th 89, 93 (4th Cir. 2023) (internal citations omitted).

## III.    Analysis

The SBA did not act unreasonably in concluding that PACEM's loan was ineligible for relief payments under the CARES Act, nor did the SBA violate the terms of the CARES Act by withholding payments. The CARES Act made plain that only loans in "regular servicing status" were entitled to relief. Pub. L. 116-136 § 1112(c)(1), 134 Stat. at 309. In

9

light of PACEM's repeated missed payments and numerous resulting revisions to the loan agreement, we see no reason to second guess the determination of the SBA that the loan was not in "regular servicing status." *Id.*

At the time Congress passed the CARES Act in March 2020, PACEM's loan was already more than six months past its repayment due date under the Initial Loan Agreement. Though the Preferred Lenders servicing PACEM's loan agreed to waive PACEM's default multiple times over, PACEM does not dispute that it was, in fact, in default. In spite of PACEM's history of defaults and loan modifications, PACEM and Atlantic Union negotiated a loan modification on the eve of the passage of the CARES Act.

The SBA did not act arbitrarily or capriciously when it concluded that PACEM's loan was ineligible for relief. The CARES Act did not obligate the SBA to disburse payments for each and every 7(a) loan. Instead, it drew a distinction between loans in regular servicing status and those that were not. The SBA Email to PACEM set forth the basis for the SBA's eligibility determination. In explaining why it had concluded that the loan was ineligible for repayments under the CARES Act, the SBA fulfilled its statutory obligation to provide a "satisfactory explanation for its actions, including a rational connection between the facts found and the choice made." *Motor Vehicles Mfgs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

We decline to reach PACEM's constitutional claim that the SBA violated the Fifth Amendment's Due Process Clause by failing to provide PACEM with notice and the opportunity to be heard. PACEM does not ask for relief in the form of a hearing before the SBA. Rather, it seeks only a declaratory judgment that the SBA violated the law. "In the

10

context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011); *see also Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (per curiam) (concluding that appellee's claim for declaratory relief was moot where his "primary claim of a present interest in the controversy is that he will obtain emotional satisfaction from a ruling that his son's death was wrongful.").

## IV.    Conclusion

Based on the foregoing, we affirm the district court's grant of summary judgment to the Small Business Administration.

*AFFIRMED*

11